Account No.: 5111463 ****

Credit Limit: $158,100.00

# SECONDARY MORTGAGE LOAN

## GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
## HOME EQUITY LINE OF CREDIT
## AGREEMENT AND DISCLOSURE STATEMENT

1. **INTRODUCTION.** In this GMAC Mortgage Home Equity Line of Credit Agreement and Disclosure Statement, as amended and extended, Exhibit A hereto and the Addendum (this "Agreement"), "GMAC" refers to GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation. "We", "us", "you," and "our" refer to the person or persons who sign this Agreement as borrower(s).

GMAC will open a Home Equity Line of Credit account (the "Account") for us when we sign this Agreement. A mortgage or deed of trust (collectively the "Mortgage") also must be signed so that advances under the Account will be secured by the mortgaged property (the "Property") identified in the Mortgage. This Agreement and the Mortgage, taken together, are called the "Credit Documents". By signing, we acknowledge that we have read the Credit Documents and we agree to use the Account on the terms set forth below.

We acknowledge that GMAC has provided us with the home equity brochure published by the Federal Reserve Board and a document entitled "Important Terms of your Home Equity Line of Credit Account" (the "Important Terms Disclosure"). Further, we acknowledge that GMAC has fulfilled all of its promises set forth in the Important Terms Disclosure with respect to providing additional information upon our request.

After giving notice of default, GMAC may end our right to advances under the Account, reduce the Credit Limit and/or demand repayment at once of all amounts outstanding under the Account in the circumstances described in paragraph 12(b). GMAC may also halt advances or reduce the Credit Limit, under the circumstances and for the period described in paragraph 12(c).

2. **PROMISE TO PAY.** We promise to pay GMAC all monies advanced under the Credit Documents, including GMAC's out-of-pocket costs shown as Initial Charges on Exhibit A. This amount at any time is called the "Earning Balance Outstanding". We also promise to pay GMAC all FINANCE CHARGES under paragraph 6 and all fees and charges under paragraph 7 ("Special Charges"). This total of accrued Finance Charges and Special Charges at any time is called the "Non-Earning Balance Outstanding". The sum of the Earning Balance Outstanding and the Non-Earning Balance Outstanding is called the "Total Balance Outstanding".

3. **OUR INDIVIDUAL LIABILITY.** GMAC may enforce its rights under this Agreement against any one of us or against all of us.

4. **USING THE ACCOUNT.** The term of this Account will consist of a "Borrowing Period" and a "Repayment Period". During the "Borrowing Period", we may borrow any amounts, up to the Credit Limit shown on the first page of this Agreement. The "Borrowing Period" begins on the "Trigger Date" and ends on the 10th anniversary of the "Agreement Date". The "Repayment Period" begins on the day after the 10th anniversary of the "Agreement Date" and will continue until the 15th anniversary of the "Agreement Date". The "Agreement Date" is date below our signatures on this Agreement or the date the Mortgage was notarized, whichever is later. The "Trigger Date" is the first day after our right to cancel the Account expires.

During the Borrowing Period we may obtain cash advances and goods by presenting Home Equity checks ("Checks") issued to us by a bank or banks selected by GMAC (the "Check Bank(s)"). Each initial and subsequent Check must be written for at least $250 except for the residents of Alabama and Mississippi, where the initial Check must be at least $2000. For residents of Kentucky the initial Check must be at least $15,100. The Check Bank will not cash Checks for us.

Also, GMAC may with its prior approval allow us to obtain from the Check Bank and if the services and/or programs are available: (a) wire transfers; (b) cashier's checks and/or (c) a credit card for the Account which will allow you to obtain: (i) cash advances and (ii) goods and/or services ("Purchases") from participating merchants and ATMS to the extent permitted by law.

We may not borrow from the Account during the Repayment Period.

GMAC is not responsible if anyone refuses to accept a Check, wire transfer, cashier's check and/or credit card from your Account.

Std Draw/Repay

5. **NATURE OF THE ACCOUNT.**

   (a) **AVAILABLE CREDIT DURING THE BORROWING PERIOD.** During the Borrowing Period the Account is a revolving credit line. The maximum amount of credit available to us ("Available Credit") is the Credit Limit less the sum of the amount of all unpaid advances under the Credit Documents and other unpaid fees and charges. Any payment which is applied against the Earning Balance Outstanding increases Available Credit 15 calendar days after the payment is received. There is no Available Credit available to us during the Repayment Period.

   (b) **ADVANCES.** The Check Bank will notify GMAC daily of any Checks, wire transfers, cashier's checks, cash advances and/or Purchases it has paid and GMAC will promptly pay the Check Bank on our behalf for any of your Checks, wire transfers, cashier's checks, cash advances and/or Purchases that it has paid. However, GMAC may elect either to honor or to refuse to honor: (i) any Check, wire transfer or cashier's check which is less than $250, is postdated, improperly completed, presented to the Check Bank more than six months after the Check, wire transfer or cashier's check is dated, or (ii) any Check, wire transfer, cashier's check, cash advance and/or Purchase for an amount which exceeds our Available Credit at the time the Check, wire transfer, cashier's check, cash advance and/or Purchase is presented to the Check Bank (iii) any Check, wire transfer, cashier's check, cash advance and/or Purchase if an Event of Default as defined in Section 12 has occurred, (iv) any Check, wire transfer, cashier's check or cash advance intended to be used in payment of all or part of the amount we owe GMAC on the Account, or (v) any Check, wire transfer, cashier's check, cash advance and/or Purchase which is dated after the Borrowing Period ends.

6. **FINANCE CHARGES.**

   (a) **DAILY RATE.** At the end of each day, GMAC will multiply the Earning Balance Outstanding (to get the Earning Balance Outstanding, GMAC takes the beginning balance of the account each day (which includes any Initial Charges 60 days after the Trigger Date, monies previously advanced for Checks, wire transfers, cashier's checks, cash advances and/or Purchases) and adds all monies advanced on that day for Checks, wire transfers, cashier's checks, cash advances and/or Purchases then GMAC subtracts any payments or credits posted as of that day; this gives GMAC the Earnings Balance Outstanding) by a Daily Rate equal to the ANNUAL PERCENTAGE RATE for that day divided by 365 (366 days in a leap year). The result is the FINANCE CHARGE for that day. The sum of these daily FINANCE CHARGES during a monthly billing cycle is the FINANCE CHARGE for the billing cycle.

   The ANNUAL PERCENTAGE RATE is based on the value of an index plus a margin and is calculated daily according to the method set forth in the Addendum. The ANNUAL PERCENTAGE RATE is a simple interest rate. The index is the Prime Rate as defined in paragraph 6(c).

   In addition, recent Daily Periodic Rates and corresponding ANNUAL PERCENTAGE RATES are shown on the Addendum.

   (b) **MAXIMUM ANNUAL PERCENTAGE RATE.** Notwithstanding any language in this Agreement to the contrary, the ANNUAL PERCENTAGE RATE will never exceed the Maximum Annual Rate shown on the Addendum.

   (c) **PRIME RATE.** The Prime Rate for any date (the "Rate Date") is the "prime rate" (or high point of any range of "prime rates") established for the Rate Date by the financial institutions surveyed by The Wall Street Journal in publishing its "Money Rates" (or any replacement) Table. The Prime Rate for the Rate Date will appear in The Wall Street Journal on its first publication date after the Rate Date. If for any reason no such information is published in The Wall Street Journal for the four consecutive days immediately after the Rate Date, and if the New York Times is then publishing a similar table that only includes the "prime rates" of financial institutions surveyed by The Wall Street Journal immediately prior to such time, GMAC will use the appropriate New York Times table until The Wall Street Journal resumes publishing the necessary information. If neither newspaper publishes such information for the four consecutive days immediately after the Rate Date, GMAC will select a substitute index that produces a similar rate, that is publicly available and that is beyond GMAC's control. We understand that a bank's "prime rate" is just a pricing index and is not necessarily the lowest rate charged by a bank.

   (d) **VARIABLE RATE.** Increases or decreases in the ANNUAL PERCENTAGE RATE and the Daily Rate take effect daily based on changes in the Prime Rate and if provided in the Addendum in the Earning Balance Outstanding. We will not be given any advance notice of changes in these Rates. An increase in these Rates will increase our minimum monthly payment.

   (e) **WHEN FINANCE CHARGES BEGIN.** FINANCE CHARGES on Initial Charges shown on Exhibit A begin 60 days after the Trigger Date. FINANCE CHARGES on any payment except for checks begin on the date GMAC makes payment. FINANCE CHARGES on a Check begin on the date it is presented to the Check Bank. Except for the Initial Charges, there is no grace period when FINANCE CHARGES do not accrue.

   (f) **COMPLIANCE WITH RATE LIMITS.** Notwithstanding any other provision of this Agreement, we will not have to pay any FINANCE CHARGES, Initial Charges or Special Charges higher than permitted by law. If it is finally determined that there would be an overcharge, but for this paragraph 6(f), the charge will be reduced to the maximum allowed by law. The amount of any prior overcharge will be used to reduce the Total Balance Outstanding and the remainder will be refunded to us. No credit or refund will cure or waive any default by us.

(g) **NATURE OF FINANCE CHARGES.** The ANNUAL PERCENTAGE RATE includes only interest and not other charges.

7. **SPECIAL CHARGES.**

(a) **LATE CHARGE.**

(i) If you are a resident of the *District of Columbia, Florida, Indiana, Iowa, Maine, Massachusetts, Michigan, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, West Virginia or Wyoming* we will not be required to pay a late charge even if your payment is not made by the due date.

(ii) If you are a resident of *New York* and GMAC does not receive any month's minimum payment within 15 days after the payment due date we will be required to pay a late charge equal to the lesser of $20 or 2% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(iii) If you are a resident *of Idaho, Kansas, Kentucky, Mississippi, Oregon or Utah* and GMAC does not receive any month's minimum within 15 days of the payment due date we will be required to pay a late charge equal to the lesser of $20 or 4% of the excess (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(iv) If you are a resident of *Wisconsin* and GMAC does not receive any month's minimum payment within 15 days of the payment due date we must pay a late charge equal to $10.

(v) If you are a resident of *Alabama, Alaska, Connecticut, Delaware, Maryland, Minnesota, Nebraska, Nevada, New Mexico, New Hampshire, or Vermont* and GMAC does not receive any month's minimum payment by the due date shown on statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(vi) If you are a resident of *Arizona, California, Colorado or Georgia* and GMAC does not receive any month's minimum payment within 10 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(vii) If you are a resident of *Tennessee* and GMAC does not receive any month's minimum payment within 5 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(viii) If you are a resident of *Virginia* and GMAC does not receive any month's minimum payment within 7 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(ix) If you are a resident of *Hawaii, Illinois, Missouri, New Jersey, Pennsylvania or Washington* and GMAC does not receive any month's minimum payment within 15 days of the payment due date as shown on our statement for that month, we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge

(x) If you are a resident of *Louisiana* and GMAC does not receive any month's minimum payment within 10 days of the payment due date as shown on the statement for that month, you will be required to pay a late charge equal to the lesser of $15 or 5% of the amount of the delinquent minimum payment due.

(xi) If you are a resident of *North Dakota* and GMAC does not receive any month's minimum payment within 15 days of the due date you will pay a late charge equal to the lesser of $15.00 or 5% of the excess of (i) the unpaid amount of such payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(xii) If you are a resident of *Montana* and GMAC does not receive any month's minimum payment by the due date shown on statement for the month we will pay a late charge equal to the lesser of $15 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(b) **ANNUAL FEE.** If you are a resident of *Hawaii, Kansas, Kentucky, Maine, Maryland, Michigan, Missouri, Montana, New Jersey, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, Wyoming, West Virginia* or the *District of Columbia* you will not have to pay an annual fee. If you are a resident of: a. *Illinois* you will pay an annual fee of $ $20.00; b. *Iowa* you will pay an annual fee of $15.00; c. *Louisiana* you will pay an annual fee of $12.00; d. *Florida* you will pay an annual fee of $25.00; e. *Ohio* you will pay an annual fee equal to the lesser of $35.00 or ½% of your available credit on the date the annual fee is charged to your account or f. if you are a resident of any other state your annual fee will be $35.00. The annual fee will be billed on the first anniversary of this Agreement, is non-refundable and constitutes a FINANCE CHARGE.

The annual fee will be billed to us each year in the same month this Agreement is signed.  GMAC will waive the annual fee if you accrue at least $100.00 of FINANCE CHARGES in the year immediately preceding the date in which the Annual Fee is charged.

3

(c) **HANDLING COSTS.** To the extent permitted by law, we will pay the following fees: (i) $25.00 for stopping the payment of any Check that you request to be not paid and (ii) $2.00 for each copy of a Check, sales draft or additional monthly billing statements that we request. However, GMAC will not charge handling costs for items requested due to a billing error inquiry.

8. **PAYMENTS.**

(a) **MINIMUM PAYMENT EACH MONTH.** During the Borrowing and Repayment Periods we agree to pay at least the amount of the minimum payment shown on each monthly billing statement by the payment due date on the statement. To figure the minimum payment during the Borrowing Period for a billing cycle, GMAC will add all FINANCE CHARGES and Special Charges accrued under paragraphs 6 and 7 respectively during the billing cycle and all overdue payments from prior billing cycle. The minimum payment is the lesser of the sum of this amount described immediately above or the Total Balance Outstanding at the end of the billing cycle period. The minimum payment for a billing cycle during the Repayment Period will be the sum of: (i) all FINANCE CHARGES and Special Charges accrued under paragraphs 6 and 7 accrued during the billing cycle; (ii) all overdue payments from prior billing cycles and (iii) the greater of $50.00 or 1.667% of the Earning Balance Outstanding at the end of the Borrowing Period. In addition, we will be required to repay GMAC any excess of the Earning Balance Outstanding over our Credit Limit.

(b) **PREPAYMENT.** We may prepay the Total Balance Outstanding in full or in part at any time without penalty.

(c) **MATURITY DATE.** We understand that making the minimum payment each month during the Borrowing Period will not result in any reduction of the Earning Balance Outstanding. Making the minimum payment each month during the Repayment Period will reduce the Earning Balance Outstanding. Unless we have paid off the Total Balance Outstanding and canceled the Account or GMAC terminates the Account before the end of the Repayment Period (the "Maturity Date") we will pay the remainder of the Total Balance Outstanding in a single payment which may be a balloon payment. See paragraphs 12(b) and 14. The Account will terminate after this final payment.

(d) **APPLICATION OF PAYMENTS.** GMAC will apply our payments first against FINANCE CHARGES and Special Charges from prior billing periods, next against advances in prior billing periods, then against FINANCE CHARGES and Special Charges from the current billing period and finally against advances obtained in the current billing period. Any Payments for Special Charges will be applied in the following order: late charges, if any; annual fees, if any; any handling costs and then to any insurance premiums. However, any time the Earning Balance Outstanding is greater than our Credit Limit, GMAC may elect to apply our payments first against advances outstanding, starting with the oldest advance.

(e) **STATEMENTS CONCERNING PAYMENTS.** GMAC may ignore statements such as "payment in full" on any check (or which accompany any check) which we send in payment of any amount owed by us. GMAC may deposit such check without notifying us and without its deposit being a settlement of the amount owed. Any such check will be applied as described in paragraph 8(d).

9. **MONTHLY STATEMENT.** GMAC will send us a statement for each monthly billing period in which we make a payment on the Account or in which the amount due is $1.00 or more.

10. **SECURITY.** The Mortgage gives GMAC a lien on the Property to the extent of the Total Balance Outstanding at any time and is made a part of this Agreement by reference. The Mortgage describes insurance we must maintain on the Property. Although we may choose the insurance company, GMAC has the right to refuse to accept our choice for reasonable cause.

11. **TRANSFER OF RIGHTS AND DUTIES.** The Account is our personal obligation, and GMAC is relying on us to repay the amounts it advances. We agree not to transfer our credit privileges or our payment duties to another person without GMAC's prior written consent. However, GMAC may transfer its rights and duties at any time with or without notice. Our heirs, successors and assigns shall be bound by all of our duties, and our approved assigns will have all of our rights. GMAC's successors and assigns shall be bound by all of GMAC's duties and will have all of GMAC's rights.

12. **EVENTS OF DEFAULT.**

(a) **NOTICE.** The events set forth in paragraphs 12(b) and 12(c) are Events of Default if and when GMAC gives any person (other than GMAC) who has signed a Credit Document ("Signer") notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default.

(b) **TERMINATION EVENTS.** In any of the events described in this paragraph 12(b), GMAC may give notice of default. Upon or after giving such notice, GMAC may permanently end our right to advances under the Account, may reduce our Credit Limit and/or, either immediately or at such later time as GMAC elects, may demand repayment at once of the Total Balance Outstanding.

4

(i) There has been fraud or material misrepresentation by us in connection with the Account;

(ii) We have failed to meet the repayment terms of this Agreement for any amount outstanding; or

(iii) To the extent permitted by law, any action or inaction by you has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, (or any legal representative or successor of yours) you agreeing to sell, transfer, or assign or selling, transferring or assigning any interest in the Property without the prior written consent of GMAC.

(c) **SUSPENSION EVENTS.** In any of the events described in this paragraph 12(c), GMAC may give notice of default. GMAC may freeze advances (not permit us to access our Account for additional advances) or reduce the Credit Limit if any of the events described below occur. GMAC will notify us if our Account is frozen or if our Credit Limit is reduced. If the reason for such action no longer exists and we would like our credit privileges reinstated, then it is our responsibility to deliver to GMAC a written request for reinstatement of credit privileges, with evidence that the event(s) causing the suspension have been cured. We promise that we will include with any request for reinstatement any evidence reasonably necessary to show that the event(s) in question have ended. If, after reasonable investigation, GMAC agrees that the event(s) resulting in such action no longer exist and that no other conditions that would permit such action currently exist, then GMAC will reinstate our credit privileges.

The following events give rise to these consequences:

(i) The value of the Property declines significantly below the appraised value of the Property used by GMAC in deciding to open the Account;

(ii) GMAC reasonably believes that we will be unable to fulfill our repayment obligations under the Account because of a material change in our financial circumstances;

(iii) Signers are in default of any of the following obligations under the Credit Documents, which we agree are material:

(A) paragraph 12(c) of the Agreement, requiring evidence of the end of an Event of Default;

(B) paragraph 15(c) of the Agreement, prohibiting conflicting instructions [or court orders];

(C) paragraph 15(e) of the Agreement, requiring notice of lost or stolen Checks and/or credit cards;

(D) paragraph 15(g)(ii) of the Agreement, requiring notice of adverse changes in our credit or financial condition or the value of the Property and requiring compliance with reasonable GMAC requests for information;

(E) paragraph 15(i) of the Agreement, requiring notice of changes in our address, name or employment and notice of death, imprisonment or incompetency;

(F) paragraph 3 of the Mortgage, prohibiting prior mortgages, deeds of trust, charges and liens on the Property;

(G) paragraph 4 of the Mortgage, regarding hazard insurance and condemnation;

(H) paragraph 5 of the Mortgage, regarding maintenance of the Property;

(I) paragraph 6 of the Mortgage, regarding protecting GMAC's security;

(J) if applicable, paragraph 1 of the Condominium Rider or Planned Unit Development Rider to the Mortgage, requiring payment of condominium or planned unit development obligations;

(K) if applicable, paragraph 2 of the Condominium Rider, regarding notice of a lapse of insurance coverage; or

(L) if applicable, paragraph 4 of the Condominium Rider or Planned Unit Development Rider, prohibiting certain actions without GMAC's consent;

(iv) The Maximum Annual Percentage Rate provided for in paragraph 6(b) is reached; or

(v) The priority of the Mortgage is adversely affected by government action to the extent that the value of the equity in the Property after liens prior to the Mortgage is less than 120% of the Credit Limit.

(vi) GMAC is prevented by any government action from applying to my Account the Annual Percentage Rate that is provided for in this Agreement.

(vii) GMAC is notified by its regulatory agency that continued advances would constitute an unsafe and unsound practice.

5

(d) **CURE, ETC.** Notwithstanding any language in this Agreement to the contrary, GMAC will not take any action upon an Event of Default unless permitted by applicable law and GMAC will give us any grace period, right to cure and/or reinstatement right required by applicable law. However, we understand and agree that this paragraph 12 is intended to give GMAC all rights permitted by applicable law.

(e) **RETURN OF CHECKS AND CREDIT CARDS.** Upon the occurrence of an Event of Default as set forth in Paragraph 12(b), we will promptly return all unused Checks and credit cards to GMAC.

(f) **FORECLOSURE.** If we do not repay the Total Balance Outstanding at once when due, GMAC may exercise any right available to it under applicable law, including foreclosure.

13. **AMENDMENT OF AGREEMENT.** We agree that GMAC may amend this Agreement, without any further consent from us, if (a) the amendment is "insignificant" (as defined under applicable federal law) or (b) if the amendment will unequivocally benefit us throughout the remainder of the term of this Agreement. All other amendments to this Agreement shall require a written agreement between GMAC and us.

14. **CANCELLATION BY US.** If we wish to close the Account, we must notify GMAC that we are closing our Account and return all unused Checks and any credit cards. The notice must specify the Account number and an effective date of cancellation. The date of cancellation must be after GMAC receives the Notice. We will be responsible for all Checks signed by us whenever written as well as all credit card cash advances and/or Purchases made by us whenever made, and we will pay GMAC the Total Balance Outstanding on the cancellation date. We will not be released from our duties until this amount is paid. If GMAC receives a check which satisfies the Total Balance Outstanding GMAC may at its sole discretion consider the Account closed.

15. **OTHER PROVISIONS.**

(a) **WAIVER.** We agree that we will not be released from any of our obligations because GMAC releases or takes any additional security for the repayment of amounts owed. GMAC may waive or delay enforcing its rights without limiting its ability to exercise them in the future. Any waiver by GMAC shall be in writing and shall apply only to the extent stated in the writing. No waiver shall be regarded as a waiver of any other event.

(b) **SATISFACTION, COLLECTION AND FORECLOSURE COSTS.** To the extent permitted by law, all satisfaction fees charged by any recording office for canceling the Mortgage will be billed to you, and to the extent permitted by law reasonable out-of-pocket costs (including attorneys' fees) incurred and projected by GMAC in enforcing its rights shall be included as additional indebtedness in any judgment or decree against us.

(c) **JOINT ACCOUNTS; CONFLICTING INSTRUCTIONS.** If more than one person signs this Agreement, then this Account is a joint account and each signer will be individually responsible and liable for the entire account balance. If this is a joint Account, we agree not to give conflicting instructions regarding the Account. Nevertheless, in the absence of a court order, GMAC may comply with a request made by any of us (even if it conflicts with a request made by another one of us) or GMAC may refuse any request. GMAC may also give notice of an Event of Default under paragraph 12(c) if it receives conflicting instructions on the Account. If GMAC receives conflicting instructions, or a court order regarding the Account, it may refuse any request or dishonor any Check or credit card cash advance or Purchase, without notice to any of us.

(d) **STOPPING PAYMENTS.** In order to stop payment on a Check, we must call the telephone number for customer inquiries shown on our most recent monthly billing statement. WHILE GMAC WILL MAKE A GOOD FAITH EFFORT TO STOP PAYMENT, GMAC DOES NOT GUARANTEE THAT PAYMENT ON ANY CHECK WILL IN FACT BE STOPPED.

(e) **LOST OR STOLEN CHECKS AND/OR CREDIT CARDS.** We agree to contact GMAC immediately at the address or telephone number shown on our most recent monthly statement if we learn that any Check and/or credit card has been lost or stolen.

(f) **GOVERNING LAW.** This Agreement will be governed by federal and Virginia law. If any provision is invalid, illegal, or unenforceable, this Agreement will be interpreted as if such provision had never been included. We agree to fully cooperate in the correction and adjustment of any errors in the loan documents if deemed necessary or desirable by GMAC to comply with any law or regulation or to meet the terms and conditions of the loan approval.

(g) **CREDIT INFORMATION.** (i) To the extent permitted by law, GMAC may disclose information about us, our performance under this Agreement, employment, credit, or other information: (1) to credit reporting agencies, (2) to affiliates of GMAC unless you (if there is more than one borrower each borrower must notify GMAC to prevent the sharing of that borrower's information with affiliates) notify GMAC at 100 Witmer Road, Horsham, PA 19044-0963 Attention: Home Equity Department that GMAC should not share this information with affiliates (upon receipt of this notice GMAC will stop sharing information with affiliates), (3) if GMAC reasonably believes disclosure necessary to ensure our compliance with the Credit Documents, or (4) if we give GMAC our written permission. We authorize GMAC to obtain reports from others (such as employers, creditors, lenders and credit reporting agencies) from time to time bearing on our credit status. This applies to each of us if this is a joint Account.

(ii) We agree to notify GMAC promptly if there is any material adverse change in our credit or financial condition or the value of the Property. We also agree to provide GMAC with any updated information GMAC reasonably requests from time to time concerning our credit or financial condition or the value of the Property.

(h) **TIME OF THE ESSENCE.** Time is of the essence in this Agreement.

(i) **CHANGE OF ADDRESS, ETC.** We will give GMAC prompt prior notice of any change in our address, name or employment and we will give GMAC prompt notice if any of us dies by sending GMAC a certified death certificate if it requests one, is imprisoned or becomes legally incompetent.

6

(j) **NOTICES.** Any GMAC notice shall be hand delivered or sent by first class, registered or certified mail to the address of the Property or such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

Any notice from us must be mailed to GMAC by first class, registered or certified mail to the address shown on our most recent monthly statement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

(k) **FAILURE TO MAKE ADVANCE.** We agree that GMAC will not be responsible if we cannot obtain an advance because of any cause beyond its reasonable control or if anyone refuses to accept a Check, wire transfer, cashier check and/or credit card.

(l) **COPIES, ETC.** If GMAC sues to enforce this Agreement, GMAC may use a copy, microfilm, or microfiche of any Check, monthly statement or other document to prove what we owe GMAC. The copy, microfilm or microfiche can be used just like the original document.

(m) **CREDIT BALANCES.** GMAC will not pay us interest on any credit balances.

(n) **ANNUAL STATEMENT.** Within ten days after receipt of a written request from us, GMAC will deliver to us once per year and without charge a statement showing the date and amount of all payments on the account for the immediately preceding 12 month period, and the Total Balance Outstanding.

(o) **USE OF FUNDS.** We agree to use all funds advanced to us for personal, family or household purposes.

(p) **TAXES.** If taxes on mortgages or the debts they secure increase in any way after the date of the Mortgage, we shall pay the full amount of any such increase.

(q) **TAX ADVICE.** We should consult a tax advisor regarding the deductibility of interest and charges under the Account.

*(THIS SPACE INTENTIONALLY LEFT BLANK)*

7

## NOTICE TO BORROWER

**You have the right to be represented by an attorney of your own choosing at the time this Agreement is signed.**

**Read the entire Agreement before you sign.**

**You are entitled to a copy of this Agreement.**

**You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with the law.**

**Do not sign this Agreement if it contains blank spaces. All spaces should be completed before you sign.**

**This Loan Agreement is secured by a mortgage on your real property. Default in the payment of this loan may result in loss of the property securing this loan.**

Dennis C. Harden  
Borrower Name

_[signature]_  
Borrower Signature

2715 Pine Ridge Lane  
Powhatan, Virginia 23139  
Address

June 11, 2007  
Date

\* \* \* \* PAY TO THE ORDER OF GMAC BANK WITHOUT RECOURSE  
_[signature]_ D. CHIODO  
LIMITED SIGNING OFFICER  
GMAC MORTGAGE, LLC f/k/a  
GMAC MORTGAGE CORPORATION

Cindy C. Harden  
Borrower Name

_[signature]_  
Borrower Signature

Address

June 11, 2007  
Date

\* \* \* \*

Borrower Name

Borrower Signature

Address

June 11, 2007  
Date

PAY TO THE ORDER OF  
WITHOUT RECOURSE  
CANCELLED  
_[signature]_ D. CHIODO  
LIMITED SIGNING OFFICER  
GMAC MORTGAGE, LLC f/k/a  
GMAC MORTGAGE CORPORATION

PAY TO THE ORDER OF  
GMAC MORTGAGE, LLC  
WITHOUT RECOURSE  
_[signature]_  
D. CHIODO  
ASSISTANT SECRETARY  
GMAC BANK

8

As used in the following notice, the terms "we", "us" and "our" refer to GMAC and the terms "you" and "your" refer to the person(s) who signs the Agreement as borrower(s).

## FAIR CREDIT BILLING ACT DISCLOSURES

**Your Billing Rights**
**Keep this Notice for Future Use**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

9

# EXHIBIT A

| Initial Charge (Settlement Costs) | Amount |
|---|---|
| Appraisal Fee | $ 0.00 |
| Title Insurance and Endorsement Fee(1) | $ 0.00 |
| Title Search Fee(2) | $ 0.00 |
| Recording Fee(1) | $ 0.00 |
| Closing Agent Fee | $ 0.00 |
| Flood Certificate | $ 0.00 |
| Attorney Fee | $ 0.00 |
| Survey | $ 0.00 |
| State Tax/Stamps | $ 0.00 |
| Intangible Tax | $ 0.00 |
| City/County Tax/Stamps | $ 0.00 |
| TOTAL | $ 0.00 |

(1) Estimated. Subject to adjustment when actual out-of-pocket costs determined.

(2) Includes title examination.

10

Account No.: 5111463

## ADDENDUM TO AGREEMENT

**THIS ADDENDUM TO AGREEMENT** (*this "Addendum"*) modifies and supplements the GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation Home Equity Line of Credit Agreement and Federal Truth-in-Lending Disclosure Statement (the "Agreement") that is being executed along with this Addendum. All terms defined in the Agreement have the same meanings in this Addendum. To the extent of any inconsistency with the Agreement, this Addendum shall control.

The ANNUAL PERCENTAGE RATE equals the Prime Rate plus a margin of 1.850%. The Daily Rate and corresponding variable ANNUAL PERCENTAGE RATE as of the day you sign this Agreement is estimated to be as follows:

| **Daily Rate** | Corresponding **ANNUAL PERCENTAGE RATE** |
|---|---|
| 0.02767% | 10.100% |

During the term of your Agreement this rate may vary.

The maximum **ANNUAL PERCENTAGE RATE** that can apply during the term of the loan is the lesser of: (a) ten percentage points (10.00%) over the index value the day before your Account is opened; or (b) the maximum percentage rate permitted by applicable law.

100% CLTV Standalone

Servicer# 8255111463

## ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

NOTE DATE:     6/11/2007
LOAN AMOUNT: $158100

BORROWER NAME:  DENNIS C. HARDEN
                CINDY C. HARDEN

PROPERTY:       2715 PINE RIDGE LANE
                POWHATAN, VA 23139

PAY TO THE ORDER OF:

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank, National Association, as Trustee for GMACM Home Equity Loan Trust 2006-HE1

WITHOUT RECOURSE

GMAC MORTGAGE LLC, Ocwen Loan Servicing, LLC, Attorney in Fact

Signor: PATRICIA J GARY
Title:  AUTHORIZED SIGNER

Servicer# 8255111463

ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

NOTE DATE:    6/11/2007
LOAN AMOUNT: $158100

BORROWER NAME: DENNIS C. HARDEN
               CINDY C. HARDEN

PROPERTY:    2715 PINE RIDGE LANE
             POWHATAN, VA 23139

PAY TO THE ORDER OF:

Ocwen Loan Servicing, LLC

WITHOUT RECOURSE

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank, National Association, as Trustee for GMACM Home Equity Loan Trust 2006-HE1, Ocwen Loan Servicing, LLC, Attorney in Fact

Signor: PATRICIA J GARY
Title:  AUTHORIZED SIGNER

Servicer# 8255111463

## ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

NOTE DATE:      6/11/2007
LOAN AMOUNT: $158100

BORROWER NAME: DENNIS C. HARDEN
CINDY C. HARDEN

PROPERTY:       2715 PINE RIDGE LANE
POWHATAN, VA 23139

PAY TO THE ORDER OF:

Bucks Financial, LLC

WITHOUT RECOURSE

Ocwen Loan Servicing, LLC

*[signature]*

Signor: PATRICIA J GARY
Title:   AUTHORIZED SIGNER

BOOK 850 PAGE 1876

Assessor's/Tax ID No. 028D-1J-6
Recording Requested By:

When Recorded Return To:

BUCKS FINANCIAL, LLC
3959 WELSH RD, SUITE 363
WILLOW GROVE, PA 19090
888.538.4597

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Powhatan, Virginia
SELLER'S SERVICING #:8255111463 "DENNIS C. HARDEN"

MERS #: 100037582508111460 SIS #: 1-888-679-6377

Date of Assignment: December 18th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS at POBOX 2026 FLINT MI 48501, 1901 E VOORHEES ST. STE C, DANVILLE, IL 61834
Assignee: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409

Executed By: DENNIS C. HARDEN AND CINDY C. HARDEN, HUSBAND AND WIFE   To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
Trustee: BRANDON BESWICK. Date of Deed of Trust: 06/11/2007 Recorded: 07/12/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 070004099 In Powhatan County, State of Virginia.
725   236-245
Property Address: 2715 PINE RIDGE LANE, POWHATAN, VA 23139

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $158,100.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
On 12-19-2013

By: _____
Patricia Gary
, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On 12-19-13, before me, SALLY NELSON, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared Patricia Gary, Assistant Secretary being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE LLC FKA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
SALLY NELSON
Notary Expires: 04/20/2014 #222056

SALLY NELSON
COMMISSION NO. 222056
MY COMMISSION EXPIRES
April 20, 2014

(This area for notarial seal)

Prepared By: Patty Gary, OCWEN LOAN SERVICING, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780 1-800-766-4622

BOOK 850 PAGE 1877

Assessor's/Tax ID No. 028D-1J-6
Recording Requested By:

When Recorded Return To:

BUCKS FINANCIAL, LLC
3959 WELSH RD, SUITE 363
WILLOW GROVE, PA 19090
888.538.4597

Powhatan, Virginia
SELLER'S SERVICING #:8255111463 "DENNIS C. HARDEN"

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Date of Assignment: December 18th, 2013
Assignor: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: BUCKS FINANCIAL, LLC at 3959 WELSH RD, STE 363, WILLOW GROVE, PA 19090

Executed By: DENNIS C. HARDEN AND CINDY C. HARDEN, HUSBAND AND WIFE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
Trustee: BRANDON BESWICK. Date of Deed of Trust: 06/11/2007 Recorded: 07/12/2007 in Book/Reel/Liber: **** Page/Folio: **** as Instrument No.: 070004099 In Powhatan County, State of Virginia.
725  236-245
Property Address: 2715 PINE RIDGE LANE, POWHATAN, VA 23139

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $158,100.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
OCWEN LOAN SERVICING, LLC
On 12.19.2013

By: _____
Patricia J Gary
Authorized Signer

STATE OF Iowa
COUNTY OF Black Hawk

On 12-19-13, before me, SALLY NELSON, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared Patricia J Gary, Authorized Signer being duly sworn of OCWEN LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
SALLY NELSON
Notary Expires 04/20/2014 #222056

SALLY NELSON
COMMISSION NO. 222056
MY COMMISSION EXPIRES
April 20, 2014

(This area for notarial seal)

Prepared By: Patty Gary, OCWEN LOAN SERVICING, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780 1-800-766-4622